**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FIRST COAST ENERGY, L.L.P.,

    Plaintiff,

v.                                                     Case No. 3:12-cv-281-J-32MCR

MID-CONTINENT CASUALTY
COMPANY,

    Defendant.
_____

**ORDER ON REPORT AND RECOMMENDATION**

The question presented is when do discovery violations become sufficiently serious to warrant entry of a partial default as a sanction. This case is before the Court on Plaintiff First Coast Energy, L.L.P.'s Amended Renewed Motion for Sanctions Including Default Judgment (Doc. 145). The assigned United States Magistrate Judge issued a Report and Recommendation (Doc. 166) recommending that the motion be granted and that, as a sanction, default be entered against Defendant Mid-Continent Casualty Company on First Coast's first-party bad-faith claim. Mid-Continent filed written objections to the Report and Recommendation. (Doc. 167.) First Coast responded to the objections. (Doc. 170.) With leave of court, Mid-Continent filed a reply in support of its objections. (Doc. 174.) The matter is now before the undersigned for review.

**I. STANDARD OF REVIEW**

After conducting a careful and complete review, a district judge may accept,

reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); M.D. Fla. R. 6.02(a); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982). The district judge must make de novo determination of those portions of the report and recommendation to which a specific objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Such objections "must 'pinpoint the specific findings that the party disagrees with.'" Roundtree v. Bush Ross, P.A., 304 F.R.D. 644, 650 (M.D. Fla. 2015) (quoting United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009) and citing Leatherwood v. Anna's Linens Co., 384 F. App'x 853, 857 (11th Cir. 2010)). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo. Id.; Garvey v, Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Even without objections, though, the district judge must review legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Owings v. T-Mobile USA, Inc., 978 F. Supp. 2d 1215, 1217 (M.D. Fla. 2013). A magistrate judge may recommend a resolution of even dispositive matters, consistent with Article III of the Constitution, "'so long as the entire process takes place under the district court's total control and jurisdiction, and the judge exercises the ultimate authority to issue an appropriate order.'" Stephens v. Tolbert, 471 F.3d 1173, 1176 (11th Cir. 2006) (quoting Thomas v. Arn, 474 U.S. 140, 153 (1985)).

First Coast contends that many of Mid-Continent's objections merely restate arguments initially made in response to the motion for sanctions and are not specific objections to the Report and Recommendation. The Court determines, however, that

most of the objections are sufficiently specific, and it would, in any event, consider de novo all issues that require addressing. See id. ("Even if no objections to the findings or recommendations have been filed, the district court may under take 'further review . . . , sua sponte or at the request of a party, under a de novo or any other standard." (quoting Thomas, 474 U.S. at 154)).

## II. THE PARTIES' POSITIONS

The Magistrate Judge has done a yeoman's work sifting through an unnecessarily complicated history of interrogatory answers and the production and nonproduction of documents over more than two years of discovery. That effort will not be reproduced here. Instead, the undersigned addresses the supposed errors in the retelling of the history that Mid-Continent says it identified in the Report and Recommendation, as well as Mid-Continent's objections to the outcome recommended by the Magistrate Judge.

### A. Mid-Continent's Objections

Mid-Continent does not contest that the Magistrate Judge employed the correct standard for the imposition of sanctions. Instead, Mid-Continent's objections boil down to the contention that default is too harsh a sanction for what it calls inadvertent oversights inaccurately characterized in the Report and Recommendation as "gross negligence rising to the level of bad faith." Mid-Continent acknowledges that documents that should have been produced in 2012, like electronic claim notes, were not produced until 2014, but says its discovery errors were neither willful nor as widespread and prejudicial as the Report and Recommendation finds. Mid-Continent believes that its efforts to investigate and fix the problems were also undertaken in

3

good faith, have been successful, and have shown that very few relevant documents were produced late. Mid-Continent also disputes that the affidavits it produced about the problem and its investigation contain any falsities. According to Mid-Continent, the task of responding to First Coast's interrogatories on coverage determinations and denials in other claims required a "monumental" and "continued good faith investigation." Mid-Continent contests that First Coast has suffered any prejudice, taking issue with certain of First Coast's representations about what was produced and when, as well as the importance of those documents to the case. Mid-Continent also takes issue with the adequacy of the Magistrate Judge's review of the evidence and depiction of discovery in the Report and Recommendation, particularly any suggestion that discovery extensions were solely Mid-Continent's fault, that Mid-Continent did not advance good faith objections to production based on relevance and privilege, or that Mid-Continent was solely responsible for the continuance of trial in January 2014. Mid-Continent urges the undersigned to reject the Report and Recommendation and, if necessary, to enter a sanction other than default.

### B. First Coast's Response

First Coast challenges whether Mid-Content has presented the kind of "specific written objections" required by Federal Rule of Civil Procedure 72(b)(2), instead of just rearguing its opposition to the motion for sanctions. First Coast also charges Mid-Continent with misrepresenting the findings in the Report and Recommendation. In particular, First Coast does not understand the Report and Recommendation to depend solely on the sheer number of pages of documents produced since the motion was filed, but also on Mid-Continent's repeated assurances that production was

4

complete, only for First Coast to inquire and ultimately prove the assurances wrong. First Coast suggests that, contrary to Mid-Continent's representation, the Report and Recommendation does address Mid-Continent's affidavits, but found that the subsequent deposition testimony showed that no adequate search, including for e-mails and training materials, was undertaken when discovery responses were initially due. First Coast also disputes Mid-Continent's characterization of the reasons it needed to serve sixth, seventh, eighth, ninth, and tenth supplemental responses to requests for production and of the relevance of the documents produced with those supplemental responses. And First Coast finds none of Mid-Continent's explanations for the lateness of its supplemental interrogatory answers adequate. First Coast believes that default is the only appropriate sanction in light of Mid-Continent's allegedly false affidavits and late production of important documents like captioned reports and the reserve history for this claim. First Coast questions whether any other sanction could provide assurance that Mid-Continent has produced all discoverable materials in its possession, custody, or control.

### III. ANALYSIS

The Court has reviewed the parties' briefing on the amended renewed motion for sanctions, the Report and Recommendation, the briefing on Mid-Continent's objections to the Report and Recommendation, and the various exhibits to the parties' filings. (Docs. 145, 148, 154, 162, 166, 167, 170, 174.) With only minor modification, the Court adopts the factual findings of the Magistrate Judge, overruling Mid-Continent's objections.

To begin with, it was appropriate for the Magistrate Judge to consider the

number of Mid-Continent's supplemental responses after the deadline as some evidence of bad faith.[1] Frankly, Mid-Continent's contention that the repeated supplements were Mid-Continent's effort to stagger production to "give First Coast time to digest" is ridiculous. The Court is not aware of any order or agreement allowing for the "staggered" production of documents that should have been produced years earlier. Instead, based on a review of the supplemental responses, the repeated supplementation is an indication of an inadequate initial investigation followed by a disjointed effort to search for responsive documents only after the Court stepped in to address the deficiencies.[2]

As for the volume of documents produced late, the undersigned agrees with First Coast that, in some circumstances, who or where a document came from may be significant even if the document itself appears duplicative of one already produced. Thus, the Magistrate Judge was not wrong to estimate the pages of late-produced documents in the thousands. Moreover, even using Mid-Continent's numbers without

---

[1] Mid-Continent also contends the Report and Recommendation mischaracterizes its sixth supplemental production as late when the July 17, 2014 Order (Doc. 129) supposedly changed the cutoff date for claims materials. Assuming for the sake of argument that Mid-Continent's characterization of the July 17, 2014 Order is accurate, the undersigned sees nothing in the Report and Recommendation either suggesting the sixth supplement was late or relying on such a finding.

[2] Mid-Continent suggests that the Magistrate Judge did not properly consider Patrick Elwood's testimony and role in the initial investigation. The undersigned disagrees. The Magistrate Judge factored Elwood's testimony into his recommendation of default. But instead of finding it reassuring, the Magistrate Judge properly saw Elwood's testimony, and the fact that apparently no one double-checked the initial production, as evidence of Mid-Continent's failures.

6

potential duplicates, a significant number of documents were produced nearly two years after they should have been.

The undersigned also agrees with First Coast that at least some of the late-produced documents are important. For instance, Mid-Continent kept a reserve log as part of the claim file for the underlying claim, but did not produce it until later, meaning First Coast had to piece together its own understanding of the reserve history from various documents. For another, though Mid-Continent says its initial production included "captioned reports," First Coast correctly responds that the captioned report Mid-Continent attaches to its objections was not for the underlying claim, but for another claim. That report was also not produced until November 2013. Captioned reports for the underlying claim are indisputably relevant, but were not produced until September 2014. Accepting for the sake of argument that Mid-Continent inadvertently failed to produce its electronic claim notes for the underlying claim, its failure to produce other documents, like the captioned reports mentioned in those electronic claim notes, further supports the conclusion that Mid-Continent's initial investigation was woefully inadequate.[3]

The undersigned rejects the contention that Mid-Continent "had no reason to question the completeness of the electronic claim file prior to April 23, 2014," when counsel for First Coast inquired. (Doc. 167 at 9.) Instead, the undersigned agrees with

---

[3] Mid-Continent has made the argument that reference to a report or memo in the claim notes does not guarantee the report or memo was ever actually created. Accepting that may occasionally be the case, such a reference in the claim notes at least should have been a prompt to determine whether the report or memo exists.

the Report and Recommendation that the May 15, 2013 Order (Doc. 54) was one such reason to double-check. Repeated inquiries from plaintiff's counsel about electronic claim notes and other documents should have served as further reminders.[4] But the inquiries were instead met with false assurances that production was complete.

Setting aside the late production of electronic claim notes and other materials from the file for the underlying claim, Mid-Continent has not provided a satisfactory reason for the repeated and late supplementation of its responses to First Coast's interrogatories and document requests regarding other pollution/environmental claims. First Coast's first set of interrogatories and document requests were served on August 28, 2012. (Docs. 145-1, 145-2.) On November 1, 2013, the Court limited the production of actual claim files to claims where coverage had been determined. (Doc. 76.) But as late as December 17, 2014, Mid-Continent was still disclosing additional denied claims covered by First Coast's first set of interrogatories (Doc. 154-11), despite repeated requests and a court order. (See, e.g., Docs. 145-6, 145-17.)

The primary explanation for the delay proffered by Mid-Continent appears to be that searching its claims has been a "monumental" undertaking.[5] Maybe. But such a large project should have begun in earnest earlier in the case, and not, as it appears, only after the Magistrate Judge granted First Coast's first motion for sanctions on

---

[4] As for the testimony of Senior Claim Manager Jack Jordan, unlike the Magistrate Judge, the undersigned does not find his affidavit and his later deposition testimony necessarily inconsistent. But neither piece of testimony explains why it took Mid-Continent so long to recognize its failures.

[5] It is worth noting that Mid-Continent only objected to the "undue burden" of the interrogatories on other claims in supplemental answers, not its original answers. (Docs. 154-1, 154-4.)

8

July 17, 2014 and ordered Mid-Continent to submit to depositions on its discovery compliance.

Mid-Continent blames First Coast for some of the delay by not identifying what other claim denials it had independently found that were not in Mid-Continent's interrogatory answers. Similarly, First Coast discovered that training materials had been produced in another case before Mid-Continent agreed to produce them in this case.[6] These instances evince, at the very least, a backwards treatment by Mid-Continent of discovery obligations, where documents are only produced when the requesting party asks for them repeatedly and by name. See Tarlton v. Cumberland Cnty. Corr. Facility, 192 F.R.D. 165, 170 (D.N.J. 2000).

Having addressed those of Mid-Continent's specific objections that require attention, the undersigned turns its focus to the recommendation of default. Again, Mid-Continent does not object to the Report and Recommendation's recitation of the standard for imposing default as a sanction. As the Report and Recommendation notes, "'fashioning appropriate sanctions for violations of discovery orders'" is a matter for the court's discretion. (Doc. 166 at 22 (citing Sussman v. Salem, Saxon, Nielsen, P.A., 154 F.R.D. 294, 298 (M.D. Fla. 1994).) The Report and Recommendation also properly recognizes that the sanction of a default is a last resort for "'willful or bad faith disregard of those orders'" and "'when less drastic sanctions would not ensure

---

[6] Mid-Continent says it did not create the training materials it later produced and believes the materials were therefore not strictly responsive to First Coast's requests for production. The undersigned sees no such restriction in the requests. (Doc. 145-1 at 4.)

9

compliance with the court's orders,'" even if the court has not already tried lesser sanctions. (Id. at 22-23 (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir. 1986) and Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993).) The sanction of default may be used not only to penalize the offending party, but also "to deter those who might be tempted to such conduct in the absence of such a deterrent." (Id. (quoting Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976).)

Mid-Continent believes the circumstances in this case compare most closely to those in Florida Power & Light Co v. Allis Chalmers Corp., 85 F.3d 1514 (11th Cir. 1996) and Altmone v. Coca-Cola Bottling Co. of New York, Inc., 169 F.R.D. 246 (D. Conn. 1996). In Florida Power & Light, the Eleventh Circuit affirmed the district court's decision not to enter default judgment against one of the defendant for waiting seventeen months to produce documents it had been ordered to produce. Id. at 1521. The district court had not abused its discretion because its order set no deadline for production and essentially no one disputed that the one relevant, but late-produced, document hardly helped the plaintiff. Id.

In Altmonte, the plaintiff first failed to timely serve a required damages analysis and then failed to timely file his witness and exhibit lists. Altmonte, 169 F.R.D. at 247-48. The defendant labeled these errors as a "blatant disregard for this Court's orders" warranting dismissal. Id. The court agreed that "Plaintiff appears to have little concept of his schedule compliance obligation," id. at 248, but declined to dismiss his claims because he had no prior notice that dismissal was a possibility and

10

because defendant sustained no real prejudice since the case was not set for trial, <u>id.</u> at 249. The court also declined to strike plaintiff's damages claim, but did assess fees and expenses associated with the delays and warned plaintiff that further delays might result in dismissal. <u>Id.</u>

The undersigned does not find the relatively minor infractions and resulting delays at issue in those two cases comparable to the situation here. Though not a perfect analog, Mid-Continent's conduct is in some ways more akin to that in <u>Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees & Restaurant Employees International Union</u>, 212 F.R.D. 178, 221-22 (S.D.N.Y. 2003), where counsel for the defendant provided almost no oversight of discovery and, when confronted with evidence of the inadequacy of the search for responsive documents, still repeatedly asserted that production was complete.

The Magistrate Judge concluded that "Defendant made no reasonable inquiry to ensure that all responsive documents have been produced" and acted "at a minimum, [with] gross negligence rising to the level of bad faith." (Doc. 166 at 26.) The undersigned agrees and finds that default is at least an available sanction.

Still, default must be the appropriate sanction. The prejudice sustained by the requesting party due to the discovery violations may be a relevant factor to consider. <u>Marcelle v. Am. Nat'l Delivery, Inc.</u>, No. 3:09-cv-82-J-34MCR, 2010 WL 1655537, *3 n.4 (M.D. Fla. Apr. 23, 2010). Mid-Continent suggests that "its inadvertent discovery omissions have been cured without prejudice" to First Coast. But this "no harm, no foul" approach elides the significant delay incurred in attempting to remedy the

11

"omissions," the impairment of First Coast's ability to use the late-produced information in preparing its case, the cost of preparing for trial only to have trial continued, in part, so that Mid-Century could complete its production, the cost of briefing the renewed motion for sanctions, and the cost of conducting depositions and other discovery to confirm Mid-Continent's compliance. Moreover, given Mid-Continent's behavior, neither First Coast nor the Court can have any confidence that Mid-Continent has finally produced all requested documents. See Tarlton, 192 F.R.D. at 170.

Deterrence is also particularly important here. Though Mid-Continent views it differently, the state court in First Coast Energy, L.L.P. v. Mid-Continent Casualty Co., Case No. 16-2006-CA-1584 (Fla. Cir. Ct. June 14, 2012) found that Mid-Continent's late and incomplete disclosure of a relevant document after responding to many inquiries by the plaintiff with repeated assurances that the document did not exist was one basis for setting aside a potential settlement agreement. (Doc. 145-14.) Yet, based on Mid-Continent's behavior in this case, little has changed since June 2012. Mid-Continent cannot continue to flout the discovery rules of this or any other court with impunity.

The Court concludes that the recommendation of default against Mid-Continent on First Coast's traditional bad-faith claim is the right one. The Magistrate Judge correctly assessed that the lesser sanction of reopening discovery on this claim would reward Mid-Continent's bad behavior without remedying the prejudice it has caused. An award of fees alone would not restore confidence that all discoverable information

has been produced. In other circumstances, an adverse jury instruction might be an appropriate lesser sanction, but in this situation, would be likely to have the same practical effect as entering default. The Court finds that default on the first-party bad-faith claim is the only option that fully penalizes Mid-Continent's conduct and deters such conduct in the future.

Importantly, this finding does not resolve the case. On March 24, 2014, the Court sua sponte directed that trial would first proceed with First Coast's first-party bad-faith claim. (Doc. 102.) If First Coast prevailed on that claim, then the case would proceed to First Coast's claim that Mid-Continent has a pattern and practice of handling pollution claims in bad faith. (Id.) Because this default on the first-party claim does not resolve the entire case, First Coast will still have to prove a pattern and practice to prevail in the lawsuit. This sanction is more properly termed a partial default, a lesser sanction than a default judgment as to the entire case.

The history of this case is tortured, protracted, and contrary to how the Court expects litigation to be handled. Neither side is completely blameless. The Court has continually urged the parties to resolve it. Now, at this new landmark in the case, the Court will require the parties to attempt to settle before proceeding further. The Court directs the parties to reinitiate mediation efforts with Terrance Schmidt. The Court will administratively close the case until Mr. Schmidt reports settlement or impasse.

Accordingly, it is hereby

**ORDERED**:

1.  The objections to the Report and Recommendation of the assigned United

States Magistrate Judge (Doc. 166) are **OVERRULED**, and the Report and Recommendation, together with this Order, is **ADOPTED** as the opinion of the Court. The Court attaches the Report and Recommendation to this Order.

2. Plaintiff First Coast Energy, L.L.P.'s Amended Renewed Motion for Sanctions Including Default Judgment (Doc. 145) is **GRANTED**. The Court will enter default in favor of First Coast on its first-party bad-faith claim, and the case will proceed on the pattern and practice claim.

3. The Clerk is **DIRECTED** to administratively close the case until further order of the Court. The parties should contact Terrance Schmidt to resume mediation.

**DONE AND ORDERED** at Jacksonville, Florida this 2nd day of September, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

bjb
Copies to:

Honorable Monte C. Richardson
United States Magistrate Judge

Terrance E. Schmidt, Esq. (Mediator)

Counsel of record

Attachment: March 2, 2015 Report and Recommendation (Doc. 166)

14